COZEN O'CONNOR
BY:   Melanie A. Miller (MM 2992)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

Attorneys for Plaintiff
Celgene Corporation

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Celgene Corporation,** | |
| **Plaintiff,** | |
| | Civil Action No.: _____ |
| v. | |
| **Associate Contact Services, Inc. and DOES 1-10,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

Plaintiff, Celgene Corporation ("Celgene"), by and through its undersigned attorneys, for its complaint against Associate Contact Services, Inc. ("ACS") and DOES 1-10 ("DOES") (collectively the "ACS Defendants") alleges as follows:

### Parties

1.   Plaintiff Celgene is a Delaware corporation with a place of business at 86 Morris Avenue, Summit, New Jersey 07901.

2.   Defendant ACS is a Canadian corporation with a principal place of business at 1421 St. James Street, Winnipeg, MB R3H OY9, Canada.

3.      Defendant ACS places, processes and completes order for international medications through a website entitled Canadian-Pharmacies-online.net ("Infringing Website") whereby generic unauthorized and unregulated lenalidomide is improperly imported into the United States to United States consumers. ACS provides inbound and outbound customer service via phone, fax, email and live chat for the Infringing Website, which ACS utilizes to sell generic drugs to consumers throughout Canada and the United States.

4.      The true names and capacities, whether individual, corporate, associate, or otherwise of DOES are unknown to Celgene at this time and Celgene therefore sues the DOES under such fictitious names. When the true names, capacities, and activities of the DOES are ascertained, Celgene will amend this Complaint accordingly. Celgene is informed and believes and thereon alleges that all of the ACS Defendants are responsible in some manner for the events and happenings referred to herein, and that Celgene's damages as alleged herein were proximately caused by the ACS Defendants.

## Jurisdiction and Venue

5.      This action arises under the Acts of Congress under the Trademark and Lanham Acts, Title 15 U.S.C. § 1051, *et seq.*, and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action involves federal questions of law. A substantial part of the events giving rise to this action have occurred and continue to occur in this judicial district. As such, the ACS Defendants should reasonably expect that their activities might have consequences herein.

6.      This Court has original jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

7.      This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

8. The ACS Defendants are subject to this Court's personal jurisdiction because, on information and belief, (1) they do substantial business in this district; and (2) they regularly solicit business from, do business with, and derive revenue from goods and/or services provided to customers in this district.

9. Venue is proper in this judicial district pursuant to Title 28 U.S.C. §§ 1391 (b) (2) and (c).

### Background as to Celgene's Business and Its Intellectual Property

10. Celgene is a global biopharmaceutical company which is the owner of all proprietary rights in and to the drug REVLIMID®, which is a drug utilized in the treatment of various cancers. REVLIMID® fights abnormal cells in the bone marrow and allows normal cells to perform their functions. The active ingredient in REVLIMID® is called lenalidomide (le-na-lid-oh-mide). REVLIMID® is used by patients with multiple myeloma (mm) and for patients with a condition called del 5q MDS and who require red blood cell transfusions to manage anemia (low red blood cell counts).

11. The REVLIMID® drug is approved by the Food and Drug Administration ("FDA"), and Health Canada, subject to restricted distribution, and is currently available in the marketplace in the United States and Canada. The FDA has approved REVLIMID®, which is taken orally, for previously treated multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS). Health Canada has similarly approved REVLIMID® for del 5q myelodysplastic syndrome (MDS).

12. Because of the potential toxicity of REVLIMID®, and in an effort to minimize the chance of fetal exposure to REVLIMID®, REVLIMID® is approved for marketing only under a special restricted distribution program approved by the FDA and Health Canada. This program is called REVLIMID REMS® in the United States and RevAid® in Canada. Under

these restricted distribution programs, only prescribers and pharmacists registered with the programs are allowed to prescribe and dispense REVLIMID®. In addition, patients must be advised of, agree to, and comply with the requirements of the REVLIMID REMS® and RevAid® programs in order to receive REVLIMID®.

13. Celgene is the owner of all trademark rights in and to the REVLIMID® mark throughout the world, including the following registrations in the United States and Canada:

- U.S. Reg. No. 3,255,216 for REVLIMID covering "pharmaceutical preparations for the treatment of certain cancers" in International Class 5;

- U.S. Reg. No. 3,074,309 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 2,925,808 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 3,169,244 for REVLIMID & Design covering "pharmaceutical preparations, namely cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- Canadian Reg. No. TMA688911 for REVLIMID covering "pharmaceutical preparations, namely cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system, namely hematological tumors, solid tumors and inflammatory diseases" in International Class 5; and

- Canadian Reg. No. TMA738157 for REVLIMID & Design covering "Pharmaceutical preparations, namely cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system, namely hematological tumors, solid tumors and inflammatory diseases" in International Class 5.

14. Celgene's U.S. Reg. No. 2925808 for REVLIMID has acquired incontestable status. 15 U.S.C. §1065. Thus, the registration for this mark shall be conclusive evidence of the validity of the registered mark, of Celgene's ownership of the mark, and of Celgene's exclusive right to use the registered mark in commerce in connection with the pharmaceuticals specified in

4

the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

15. Celgene has expended significant time, energy and resources in the protection and promotion of its REVLIMID® brand throughout the world.

16. The effectiveness of the REVLIMID® drug, an immunomodulatory agent, for previously treated patients with multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS), and for patients who require red blood cell transfusions to manage anemia (low red blood cell counts) has delivered results in terms of treatment, and has resulted in significant commercial success.

17. Through Celgene's use of the REVLIMID® mark in connection with it drug, REVLIMID® has become associated in the minds of the public with Celgene.

18. Celgene's REVLIMID® mark is strong and it is inherently distinctive.

19. Celgene's REVLIMID® mark is famous and represents the exceedingly valuable goodwill of Celgene.

### Background as to the ACS Defendants' Unlawful Conduct

20. ACS, through the Infringing Website and via phone, fax, email and live chat, places, processes and completes orders for international medications whereby generic lenalidomide is improperly imported into the United States to United States consumers.

21. The Infringing Website is active and solicits business throughout the United States, and sells to consumers throughout the United States, including consumers in the District of New Jersey, a variety of drugs including lenalidomide.

22. The ACS Defendants utilize, without authorization, the REVLIMID® mark in connection with the sale of lenalidomide.

23. The ACS Defendants are not registered or approved pharmacies under any of the United States or Canadian restricted distribution programs, including the RevAid® and REVLIMID REMS® programs.

24. The ACS Defendants are dispensing lenalidomide to patients who are not registered with Celgene, and, as such, do not meet the conditions of the Canadian and American government mandated restricted RevAid® and REVLIMID REMS® programs.

25. The ACS Defendants' distribution, without authorization, of lenalidomide represents serious health and safety, and consumer protection issues.

26. The Infringing Website also uses the REVLIMID® marks as a keyword on the website and in connection with the sale of lenalidomide.

27. By utilizing the search function at the Infringing Website, a consumer can search for the term REVLIMID® and correspondingly purchase unauthorized and unregulated lenalidomide.

28. The orders for lenalidomide placed, processed and completed by the ACS Defendants, and the lenalidomide drug offered for sale via the Infringing Website, is not manufactured by Celgene, and no association or relationship exists between Celgene and the ACS Defendants.

29. The ACS Defendants' unauthorized use of the REVLIMID® mark deceives the consumer into believing that they are purchasing genuine Celgene drugs.

30. The ACS Defendants' unauthorized use of the REVLIMID® mark falsely suggests the existence of an association or sponsorship relationship with Celgene.

31. The ACS Defendants' use of the REVLIMID® mark will likely result in consumer confusion in the marketplace with regards to the source and/or sponsorship of the REVLIMID® drug.

32. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

33. Given the serious health and safety issues inherent in taking the REVLIMID®, drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

34. The ACS Defendants' continued use of the REVLIMID® mark is undermining Celgene's brand identity and the positive public perception of Celgene's REVLIMID® drug. Celgene's goodwill is extremely valuable to Celgene and the ACS Defendants' continued unauthorized use of REVLIMID® is harming Celgene

35. The ACS Defendants have not received authorization, or obtained a license, from Celgene to use any of Celgene's trademarks. Similarly, Celgene has not acquiesced to the ACS Defendants' use of the REVLIMID mark®.

36. Since May of 2014, Celgene has requested that the Infringing Website cease and desist from directly and/or indirectly infringing Celgene's REVLIMID® mark and cease the unauthorized distribution of lenalidomide.

37. Despite receiving notice of their infringing activities, the ACS Defendants, via the Infringing Website, continue to willfully use the REVLIMID® mark and continue to distribute lenalidomide without authorization.

38. The ACS Defendants' activities are likely to cause confusion or mistake among prospective consumers, are likely to dilute Celgene's REVLIMID® mark, and are likely to mislead and/or deceive prospective consumers with respect to the origin and quality of the lenalidomide sold at the Infringing Website.

39. The ACS Defendants' unauthorized use of Celgene's REVLIMID® mark constitutes unfair competition.

40. The ACS Defendants' unauthorized distribution of lenalidomide in conjunction with Celgene's REVLIMID® mark constitutes unfair competition.

41. The ACS Defendants' unauthorized distribution of lenalidomide results in serious health and safety issues directly related to Celgene's REVLIMID® drug that will irreparably damage the goodwill inherent in Celgene's REVLIMID® mark.

## COUNT I – TRADEMARK INFRINGEMENT

42. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

43. The federal registrations of Celgene's REVLIMID® mark evidences Celgene's exclusive right to use its REVLIMID® mark in connection with pharmaceutical preparations, namely, cytokine inhibitory drugs; and pharmaceutical preparations that modulate the immune system. 15 U.S.C. § 1115.

44. The federal registrations for Celgene's REVLIMID® mark conclusively evidences the validity of the registered marks, Celgene's ownership of marks, and Celgene's exclusive right to use the REVLIMID® marks in commerce. 15 U.S.C. §§ 1065, 1115.

45. The ACS Defendants' utilize, without authorization, the REVLIMID® mark in connection with the unauthorized sale of lenalidomide.

46. The ACS Defendants' use of REVLIMID is identical in sound, meaning and appearance to Celgene's REVLIMID® marks. The marks create the same commercial impression and are confusingly similar.

47. The ACS Defendants are marketing and distributing lenalidomide using the name REVLIMID® to consumers in the United States and Canada.

48. The ACS Defendants' adoption and use of the REVLIMID® mark in connection with the sale of lenalidomide is likely to cause confusion, or mistake, or to deceive as to the source, affiliation, or sponsorship with Celgene's REVLIMID® mark in violation of 15 U.S.C. § 1051 et seq., specifically §§ 1114-18.

49. This unauthorized use by the ACS Defendants constitutes infringement of Celgene's registered marks, described above, in violation of 15 U.S.C. § 1051 et seq., to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill.

50. The activities of the ACS Defendants complained of herein constitute willful and intentional infringement of Celgene's federally registered REVLIMID® mark, in derogation of Celgene's rights in violation of 15 U.S.C. §§ 1114-18. Acts of infringement commenced and have continued in spite of the ACS Defendants' knowledge that the use of Celgene's REVLIMID® mark was and is in contravention of Celgene's rights.

51. Celgene has not given the ACS Defendants consent directly or indirectly to use the REVLIMID® mark, or any mark similar thereto.

52. The ACS Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

53. Celgene's damages from the aforesaid unlawful actions of the ACS Defendants, to the extent ascertainable, have not yet been determined.

54. Celgene seeks attorney's fees and costs given the willful conduct of the ACS Defendants.

55. Celgene seeks treble damages given the willful conduct of the ACS Defendants.

## COUNT II – FEDERAL UNFAIR COMPETITION

56. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

57. Celgene's REVLIMID® mark is distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

58. The ACS Defendants utilize, without authorization, the REVLIMID® mark in connection with the unauthorized sale of lenalidomide.

59. The lenalidomide drug offered for sale by the ACS Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the ACS Defendants.

60. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

61. Given the serious health and safety issues inherent in taking the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

62. Celgene has not given consent directly or indirectly to the ACS Defendants to use its REVLIMID® mark, or any mark similar thereto.

63. The ACS Defendants' activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to Celgene's reputation and goodwill.

64. The ACS Defendants have unfairly competed with Celgene in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the designation REVLIMID and by selling lenalidomide outside the restricted distribution programs and in violation of required health and safety guidelines. This unauthorized use by the ACS Defendants constitutes unfair competition to the substantial and

irreparable injury of the public and of Celgene's marks, business reputation, and goodwill. 15 U.S.C. § 1125.

65. The activities of the ACS Defendants complained of herein constitute willful and intentional tort, in derogation of Celgene's rights. Acts of unfair competition commenced and have continued in spite of the ACS Defendants' knowledge that the use of Celgene's REVLIMID® mark was and is in contravention of Celgene's rights.

66. The ACS Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

67. Celgene's damages from the aforesaid unlawful actions of the ACS Defendants, to the extent ascertainable, have not yet been determined.

68. Celgene seeks attorney's fees and costs given the willful conduct of the ACS Defendants.

69. Celgene seeks treble damages given the willful conduct of the ACS Defendants.

### COUNT III – FALSE DESIGNATION OF ORIGIN

70. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

71. This cause of action is for false designation of origin pursuant to 15 U.S.C. § 1125 *et seq.*

72. Celgene's REVLIMID® mark is distinctive and has acquired secondary meaning and significance in the minds of the relevant public.

73. The ACS Defendants utilize, without authorization, the REVLIMID® mark in connection with the sale of unauthorized lenalidomide.

74. The lenalidomide drug offered for sale by the ACS Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the ACS Defendants.

75. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

76. Given the serious health and safety issues inherent in taking the REVLIMID®, drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

77. Celgene has not given the ACS Defendants consent directly or indirectly to use its REVLIMID® mark, or any marks similar thereto.

78. The ACS Defendants' adoption and use of the REVLIMID® mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the ACS Defendants with Celgene, and Celgene is likely to be damaged by such actions. Accordingly, such conduct constitutes false designation of origin under Section 43(a) of the Lanham Act.

79. The ACS Defendants have caused confusion in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the designation REVLIMID® and by selling lenalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

80. The ACS Defendants had knowledge of the falsity of the designation of origin in that they knew, among other things, of Celgene's reputation and good will developed through Celgene in its REVLIMID® mark.

81. These actions of the ACS Defendants are likely to confuse, mislead, and deceive members of the public as to the origin or sponsorship of the ACS Defendants and Celgene in violation of 15 U.S.C. § 1125(a).

82. The aforementioned activities by the ACS Defendants constitute unfair competition and unfair trade practices, and are likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1125(a).

83. The ACS Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

84. Celgene's damages from the aforesaid unlawful actions of the ACS Defendants, to the extent ascertainable, have not yet been determined.

85. Celgene seeks attorney's fees and costs given the willful conduct of the ACS Defendants.

86. Celgene seeks treble damages given the willful conduct of the ACS Defendants.

## COUNT IV -- DILUTION

87. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

88. This cause of action is for dilution pursuant to 15 U.S.C. § 1125(c).

89. Celgene's REVLIMID® mark is distinctive.

90. Through Celgene's longstanding use of its REVLIMID® mark on its drugs and prominently displayed in its promotional literature, and through the significant amount, volume and geographic extent of Celgene's sales, Celgene's REVLIMID® mark is famous.

91. The ACS Defendants' utilize, without authorization, the REVLIMID® mark in connection with the unauthorized sale of lenalidomide.

92. The lenalidomide offered for sale by the ACS Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the ACS Defendants.

93. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

94. The ACS Defendants' adoption and use of the REVLIMID mark is likely to cause dilution of Celgene's REVLIMID® mark. Accordingly, such conduct violates 15 U.S.C. § 1125(c).

95. The ACS Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

96. Celgene's damages from the aforesaid unlawful actions of the ACS Defendants, to the extent ascertainable, have not yet been determined.

**COUNT V – VIOLATION OF NEW JERSEY DECEPTIVE TRADE PRACTICES ACT**

97. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

98. The ACS Defendants have practiced deceptive business and trade practices in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the designation REVLIMID® and by selling lenalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

99. The ACS Defendants' aforesaid conduct constitutes unfair, unlawful, and deceptive business and trade practices in violation of N.J. Stat. § 56:8-2.

100. Many of these wrongful acts occurred in the State of New Jersey and harmed the New Jersey public at large.

101. These wrongful acts have proximately caused and continue to cause Celgene substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to its reputation, and diminution in the value of its products and technology. These actions will cause imminent irreparable harm and injury to Celgene, the amount of which will be difficult to ascertain, if they continue.

102. Celgene is without an adequate remedy at law.

103. Celgene is entitled to an injunction restraining the ACS Defendants, and all persons or entities acting in concert with it, from engaging in further such unlawful and deceptive conduct.

104. Celgene is entitled to recover from the ACS Defendants the damages sustained by it as a result of the ACS Defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time.

105. Celgene is further entitled to recover from the ACS Defendants the gains, profits, and advantages it has obtained as a result of their wrongful acts as hereinabove alleged. Celgene is at present unable to ascertain the full extent of these gains, profits, and advantages, but Celgene is informed and believes and based thereon alleges that the ACS Defendants have obtained such gains, profits, and advantages in an amount thus far undetermined, but in excess of $75,000.

106. The conduct of the ACS Defendants was and is fraudulent, oppressive, malicious, and in conscious disregard of the rights of Celgene, and Celgene is therefore entitled to punitive damages against the ACS Defendants.

## PRAYERS FOR RELIEF

**WHEREFORE**, Celgene prays for relief against the ACS Defendants as follows:

(1)   That the Court preliminary and permanently enjoin and restrain the ACS Defendants, their officers, directors, agents, employees and all persons in active concert or participation with it who receives actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

  (a)   infringing, inducing or contributing to the infringement of Celgene's intellectual property;

  (b)   engaging in any acts or activities directly or indirectly calculated to infringe the REVLIMID® mark;

  (c)   using in selling, offering for sale, promoting, advertising, marketing or distributing of press releases, articles, advertisements or marketing materials that infringe upon Celgene's rights;

  (d)   using any designation, term, mark, slogan, logo, configuration or design that is confusingly similar to the REVLIMID® mark; and

  (e)   otherwise competing unfairly with Celgene.

(2)   That the Court find that the ACS Defendants are infringing Celgene's REVLIMID® mark, are diluting Celgene's REVLIMID® mark, are falsely designating the origin of their goods, competing unfairly with Celgene, and otherwise have been unjustly enriched.

(3)   That the Court Order the ACS Defendants to deliver up to Celgene for destruction, at the ACS Defendants' expense, all newsletters, articles, web site materials, literature, brochures, promotional materials, advertisements and other communications to the

public in the possession or under the control of the ACS Defendants, and any other material or any representations that are or may contain designations similar to the REVLIMID® mark.

(4)     That the Court Order the ACS Defendants to account for and pay to Celgene the damages to which Celgene is entitled as a consequence of the infringement.

(5)     That the Court Order the ACS Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the ACS Defendants' unfair competition.

(6)     That the Court Order the ACS Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the ACS Defendants' false designation of origin.

(7)     That the Court Order the ACS Defendants to account for and pay over to Celgene all profits received by the ACS Defendants from their unlawful acts, and for their deceptive trade practices, in an amount consisting of the gains, profits, and advantages the ACS Defendants have obtained as a result of their wrongful acts as hereinabove alleged, which damages will be proven with greater precision at trial.

(8)     That the Court Order the ACS Defendants to account for and pay over to Celgene all profits received by the ACS Defendants from their unlawful acts, and for their unjust enrichment.

(9)     That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of the ACS Defendants so as to prevent fraud on the Court and so as to ensure the capacity of the ACS Defendants to pay, and the prompt payment of, any judgment entered against the ACS Defendants in this action.

(10)    That the Court award Celgene its compensatory, incidental, and consequential damages.

(11)    That the Court award Celgene enhanced, treble, and/or punitive damages.

(12) That the Court award Celgene its reasonable attorney's fees and the costs of this action.

(13) That the Court grant Celgene such other relief as is just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Celgene demands a trial by jury on all triable issues of fact.

Dated: December 24, 2015

Respectfully submitted by:

COZEN O'CONNOR

<u>/s/ Melanie A. Miller</u>
Melanie A. Miller (MM 2992)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

and

Camille M. Miller (to be admitted pro hac vice)
J. Trevor Cloak (to be admitted pro hac vice)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-7273 – Telephone
(215) 701- 2273 – Facsimile
cmiller@cozen.com – E-Mail
jcloak@cozen.com – E-Mail

*Attorneys for Plaintiff, Celgene Corporation*